Argued and submitted July 7, 2011, reversed and remanded October 16, 2013

Rick C. LOVE,
*Plaintiff-Appellant,*
*v.*

PRIME, INC.,
*Defendant-Respondent.*

Marion County Circuit Court
09C17071; A146178

312 P3d 562

William D. Stark argued the cause and filed the briefs for appellant.

Dennis S. Reese argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Plaintiff appeals a judgment for defendant on plaintiff's disability-discrimination claim, assigning error to an order that granted summary judgment to defendant and an order that denied a motion for a stay. We conclude that the trial court erred in granting summary judgment, which renders the assignment on the stay moot. Accordingly, we reverse the judgment and remand.

On review of an order granting summary judgment, we state the facts in the light most favorable to the nonmoving party, in this case, plaintiff. ORCP 47 C; *Milne v. Milne Construction Co.*, 207 Or App 382, 384, 142 P3d 475, *rev den*, 342 Or 253 (2006).

Plaintiff applied for a commercial truck driver position with defendant, a motor carrier. At the orientation for the job, plaintiff underwent a physical examination to determine whether he was qualified under federal Department of Transportation (DOT) regulations to operate a commercial motor vehicle.[1] At the time of the examination, plaintiff already had a medical certificate indicating that he satisfied DOT requirements.

The results of the examination were sent to defendant's physician, who concluded that plaintiff was not qualified to operate a commercial motor vehicle because he had a defibrillator in his chest and had been diagnosed with a medical condition that placed him at risk of sudden cardiac death. One of defendant's employees told plaintiff that, if he had the defibrillator removed and obtained a medical release after the procedure, defendant would hire him.

Plaintiff had the defibrillator removed, and his physician wrote defendant a letter stating that plaintiff had no conditions that would affect his employment as a truck driver. Plaintiff again sought employment with defendant. At the request of defendant's physician, plaintiff sent his medical records to defendant. After reviewing plaintiff's medical

---

[1] The DOT's Federal Motor Carrier Safety Regulations "establish minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers" and "establish minimum duties of motor carriers with respect to the qualifications of their drivers." 49 CFR § 391.1.

records and the report of plaintiff's physician, defendant's physician again determined that plaintiff was not medically qualified to operate a commercial motor vehicle, specifically noting that, even without the defibrillator, plaintiff continued to have a diagnosis of a medical condition that placed him at risk of sudden cardiac death. As a result, defendant chose not to hire plaintiff.

Plaintiff thereafter filed an action that alleged a disability-discrimination claim against defendant under Oregon law, contending that he "was able and was medically certified to do any truck driving job for [defendant] without any accommodation" and that a "substantial factor in the decision to deny plaintiff employment was because of his health history and/or the erroneous perception that plaintiff had a disability."

Defendant moved for summary judgment on plaintiff's disability-discrimination claim on the ground that, before filing his action, plaintiff was required to exhaust his administrative remedies by applying to the DOT to resolve the conflict between plaintiff's and defendant's physicians about whether plaintiff met DOT requirements to operate a commercial motor vehicle. Defendant contended that "Congress has given the DOT the sole discretion to set driver qualifications" and "the question of plaintiff's physical qualification [is] within the sole province of the DOT." Plaintiff responded that the determination whether he was physically qualified to drive was not subject to DOT resolution because defendant's physician had not performed a valid DOT medical examination and, consequently, had not triggered a duty by plaintiff to apply to the DOT to resolve whether he was qualified to operate a commercial motor vehicle.

The court granted defendant's motion for summary judgment, concluding that plaintiff "must first exhaust his administrative remedies before suing an employer based on his [DOT] qualifications" and that, "if plaintiff cannot [prove] in state court that he was qualified at the time [of the employment decision]—as defined and determined by the [DOT]—then he is not in a position to prove his state disability[-]discrimination claim." (Underlining omitted.)

Plaintiff appeals, contending, among other things, that the trial court erred in granting summary judgment because he was not required to apply to the DOT for a determination of his physical qualification to operate a commercial motor vehicle before bringing his disability-discrimination claim. Although the parties and the trial court identified the dispositive issue to be whether plaintiff was required to exhaust his administrative remedies before bringing his claim, we do not agree that that principle applies here. Under the exhaustion principle, "a claimant cannot judicially challenge an allegedly erroneous agency process or its allegedly erroneous outcome until he or she has followed the agency's own mechanisms of challenge." *Olsen v. Deschutes County*, 204 Or App 7, 23, 127 P3d 655, *rev den*, 341 Or 80 (2006). The principle does not apply when, as here, a party is not challenging an agency process or its outcome. *See id.* at 23-24. Here, the applicable principle is that of primary jurisdiction.

Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency," *Reiter v. Cooper*, 507 US 258, 268, 113 S Ct 1213, 122 L Ed 2d 604 (1993), "by which courts determine whether and when to defer exercising jurisdiction to permit an administrative agency to first decide a question," *Adamson v. WorldCom Communications, Inc.*, 190 Or App 215, 223, 78 P3d 577 (2003), *rev den*, 336 Or 657 (2004). Here, plaintiff's claim for disability discrimination is a claim that is cognizable in court but, as we will explain, it includes within it an issue that could be subject to resolution by the DOT, *viz.*, whether plaintiff met the physical requirements to drive a commercial motor vehicle at the time that defendant decided not to hire him. To place the issue in perspective, it is necessary to briefly describe plaintiff's claim and the federal regulatory regime under which drivers become qualified to drive commercial motor vehicles.

ORS 659A.112 (2007), *amended by* Or Laws 2009, ch 508, § 6, prohibits discrimination on the basis of disability in hiring and employing an otherwise qualified person. A person "is otherwise qualified for a position if the person,

with or without reasonable accommodation, can perform the essential functions of the position." ORS 659A.115 (2007), *amended by* Or Laws 2009, ch 508, § 7. Plaintiff applied for a position as a commercial truck driver, which is a position for which a person must meet DOT requirements in order to be qualified to perform the job.

Congress has delegated to the Secretary of Transportation the authority to prescribe the qualifications of people who operate commercial motor vehicles, *see* 49 USC §§ 31102, 31133, and, accordingly, the DOT has established that a person "must not operate a commercial motor vehicle unless" the person qualifies to do so under DOT regulations, 49 CFR § 391.41. DOT regulations prohibit a motor carrier from permitting "a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle." 49 CFR § 391.11. Thus, carriers have an obligation to determine whether a driver satisfies DOT requirements to drive a commercial motor vehicle before permitting the driver to do so, and refusing to employ a person as a commercial driver on the ground that the person does not meet DOT requirements is not prohibited discrimination under ORS 659A.112 (2007), because a person who does not meet the requirements cannot perform the essential functions of a commercial driver.

DOT regulations establish two requirements that a driver must satisfy to be physically qualified to drive a commercial motor vehicle: the driver must meet "the physical qualification standards" of 49 CFR section 391.41(b) and must comply "with the medical examination requirements" of 49 CFR section 391.43. 49 CFR § 391.41(a)(3). 49 CFR section 391.43(a) requires a licensed medical examiner to examine the driver according to detailed criteria to determine whether the driver "is physically qualified to operate a commercial motor vehicle in accordance with" the standards specified in 41 CFR section 391.41(b). The regulations direct the medical examiner to complete a medical examiner's certificate if the examiner determines that the driver meets the standards. 41 CFR § 391.43(g).

Although a driver may have a medical examiner's certificate, DOT regulations establish that a motor carrier

is not required to treat the certificate as determinative of whether the driver is physically qualified to drive. One way in which they do that is to create a mechanism by which to resolve disagreements between a carrier's physician and a driver's physician about the driver's qualification to drive. 49 CFR § 391.47.[2] There would be no need to resolve such a disagreement if a carrier were required to accept a determination by the driver's physician that the driver is qualified under DOT regulations to do that. It follows that a carrier may reject a driver's physician's determination that the driver is physically qualified to drive if the carrier's physician reaches a contrary conclusion.[3]

The question that we must resolve is whether the DOT has primary jurisdiction to determine whether plaintiff qualified to operate a commercial vehicle for defendant when plaintiff's and defendant's physicians disagreed about whether plaintiff was physically able to do that. There is no fixed formula for determining whether an agency has primary jurisdiction over a dispute or, as in this case, an issue that must be resolved in a dispute. *Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 192, 935 P2d 411 (1997).

The United States Supreme Court has explained that primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special

---

[2] 49 CFR section 391.47 provides, as relevant, that the DOT will accept an application to determine a driver's medical qualification to operate a commercial motor vehicle if the applicant submits "proof that there is a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualifications." 49 CFR § 391.47(a), (b)(2).

[3] Plaintiff contends that, because he had a medical certificate at the time that defendant chose not to hire him, he was qualified to operate a commercial motor vehicle. Although a driver generally needs to be medically examined and certified in accordance with 49 CFR section 391.43 once every 24 months, 49 CFR § 391.45(b)(1), a driver must be reexamined and certified if the driver's "ability to perform his/her normal duties has been impaired by a physical or mental injury or disease," 49 CFR § 391.45(c). Thus, a driver who has a current medical certificate is not conclusively qualified to operate a commercial motor vehicle because a physical or mental injury or disease may have impaired the driver's ability to perform the driver's normal duties since the examination. Therefore, a motor carrier may be justified in reexamining a driver—notwithstanding that the driver has a current medical certificate—in order to verify that the driver qualifies to operate a commercial motor vehicle.

competence of an administrative body." *United States v. Western Pac. R. Co.*, 352 US 59, 63-64, 77 S Ct 161, 1 L Ed 2d 126 (1956). If resolution of an issue has been committed to the special competence of an administrative agency, then a court should not disregard that commitment and resolve the issue itself if doing so would infringe on the agency's function. Furthermore, when an agency designs and enforces a regulatory scheme, the agency may be better equipped than is a court to resolve an issue governed by the regulatory scheme. *Id.* at 64-65.

Here, the DOT has established a mechanism to resolve conflicts between a carrier's physician and a driver's physician over a driver's qualification to operate a commercial motor vehicle. The DOT is the agency to which a determination of a driver's qualification has been committed under those circumstances, and the DOT has both substantive expertise concerning the regulations—because it promulgated them—and expertise on how to resolve a disagreement between physicians on whether a driver qualifies to operate a commercial motor vehicle. Thus, we conclude that the determination whether a driver qualifies to operate a commercial vehicle when physicians for the driver and the carrier disagree about the driver's qualification is a determination that, in appropriate circumstances, is subject to the primary-jurisdiction doctrine, *viz.*, it is a determination that should be made by the DOT rather than a court in a case involving a claim whose resolution depends on whether the driver is qualified to operate a commercial vehicle. However, where, as here, the judicial relief sought by the driver does not include injunctive relief to require the carrier to hire the driver as a commercial driver,[4] and the DOT procedure is not, in fact, available to resolve whether the driver is qualified to operate a commercial vehicle, then the primary-jurisdiction doctrine does not apply.

We draw the distinction that we do on the application of primary jurisdiction in this case based on our understanding of the principles that underlie the primary-jurisdiction doctrine. The core principle is one of respect for the role

---

[4] *See, e.g.,* ORS 659A.885(1) (authorizes court to grant injunctive relief in employment-discrimination cases, including requiring a defendant to hire a plaintiff as an employee).

and expertise of administrative agencies in performing the functions that have been assigned to them. Consistently with that principle, courts abate claims under the primary-jurisdiction doctrine to allow administrative agencies to resolve issues that are subject to decision by them. *See, e.g., Boise Cascade Corp.*, 325 Or at 193. After an agency has resolved an issue within its jurisdiction, a court can then proceed to resolve an abated claim in a manner that is consistent with the agency's resolution of the issue that was within the agency's jurisdiction.

The other animating principle behind the doctrine is one that seeks to prevent courts from taking actions that impair or undermine the ability of administrative agencies to do the work that has been assigned to them. If court adjudication of a claim would have that effect on an administrative agency's ability to do its work, a court should refrain from acting until the affected agency can fulfill its duties under the regulatory regime for which it is responsible. *See, e.g., id.*; *Boilermakers v. Hardeman*, 401 US 233, 238, 91 S Ct 609, 28 L Ed 2d 10 (1971).

Those principles and, hence, the primary-jurisdiction doctrine have no application where, as we conclude here, the DOT procedure to resolve the dispute between plaintiff's and defendant's physicians over plaintiff's qualification to operate a commercial vehicle cannot now be invoked by the parties in this case. The DOT procedure can be invoked by a driver or carrier and is designed to resolve a contemporaneous impasse over whether the carrier can lawfully employ the driver to operate a commercial vehicle. 49 CFR § 391.47. Once that procedure is invoked, the driver becomes disqualified from operating a commercial vehicle for any carrier until the driver's qualification has been resolved through the DOT process. *Id.* The driver-disqualification feature of the administrative process, in particular, persuades us that the DOT process is intended to apply to a dispute over whether a driver is *now* qualified to operate a commercial vehicle, not whether, as in this case, the driver was qualified to do that based on the driver's medical condition several years earlier. Hence, the process is not one that could now be invoked to have the DOT determine whether plaintiff was qualified to operate a commercial vehicle in 2007 when defendant

decided not to hire him. Because there is no administrative procedure by which to have the DOT now determine whether plaintiff was qualified to operate a commercial vehicle in 2007, the issue of plaintiff's qualification to do that is not one that is subject to the primary-jurisdiction doctrine.[5]

Two federal circuit courts have upheld the dismissal of disability-discrimination claims that are comparable to the claim in this case on the ground that, because the commercial drivers in those cases had not pursued the DOT procedure to resolve a dispute between their physicians and those of their respective carriers over the drivers' qualifications, they had failed to exhaust their administrative remedies and, hence, could not pursue their claims in court. *See Harris v. P.A.M. Transport, Inc.*, 339 F3d 635, 638-39 (8th Cir 2003); *Bay v. Cassens Transp. Co.*, 212 F3d 969, 976 n 5 (7th Cir 2000). Significantly, in contrast with the primary-jurisdiction doctrine, the exhaustion-of-remedies doctrine applies to prevent the litigation of a dispute without regard to whether the applicable administrative process is one that the litigants could pursue after filing their action, *see, e.g., Wallace v. State ex rel PERB*, 245 Or App 16, 26-28, 263 P3d 1020 (2011), so the dismissal of the federal cases did not depend on whether the dispute over the drivers' qualifications could be submitted to the DOT for resolution. As we have explained, the exhaustion-of-remedies doctrine does not apply to this case, 259 Or App at 4, so we decline to follow the federal cases.

The trial court granted summary judgment to defendant on plaintiff's disability-discrimination claim on the ground that plaintiff could not prove that he was qualified to perform the duties of a commercial truck driver because he had failed to resolve through the DOT the dispute between his and defendant's physicians over his qualification to operate a commercial vehicle. Because the trial court erred in

---

[5] As noted above, 259 Or App at 7, the doctrine could apply had plaintiff filed his action promptly after defendant refused to hire him and sought an injunction to require defendant to hire him. In those circumstances, the DOT procedure to resolve the dispute over plaintiff's qualification to operate a commercial vehicle would have been available to the parties, and the court could have applied the primary-jurisdiction doctrine to require them to submit the dispute to the DOT for resolution.

granting summary judgment on that basis, we reverse and remand the case.

Reversed and remanded.